K475robC                    phone conference

 1 | UNITED STATES DISTRICT COURT
   | SOUTHERN DISTRICT OF NEW YORK
 2 | ------------------------------x
   |
 3 | UNITED STATES OF AMERICA,                New York, N.Y.
   |
 4 |           v.                             20 Cr. 162 (JPO)
   |
 5 | SCOTT ROBINSON,
   | SCOTT MANGINI,
 6 |
   |              Defendants.
 7 |
   | ------------------------------x
 8 |
   |                                          April 7, 2020
 9 |                                          11:00 a.m.
   |
10 |
   | Before:
11 |
   |                   HON. J. PAUL OETKEN,
12 |
   |                                          District Judge
13 |
   |
14 |
   |
15 |                         APPEARANCES
   |
16 | AUDREY STRAUSS
   |      Acting United States Attorney for the
17 |      Southern District of New York
   | BY:  SARAH MORTAZAVI
18 |      BENET J. KEARNEY
   |      Assistant United States Attorneys
19 |
   | WILLIAM M. BUTLER, JR
20 |      Attorney for Defendant Robinson
   |
21 | GOODWIN PROCTER, LLP (NYC)
   |      Attorneys for Defendant Mangini
22 | BY:  WILLIAM J. HARRINGTON
   |      JEFF MARCUS
23 |
   |
24 | ALSO PRESENT:  MOHAMMED AHMED, Pretrial Services
   |
25 |

1          (Case called; all parties appearing telephonically)

2          THE DEPUTY CLERK:  Starting with the government,

3   counsel, please state your name for the record.

4          MS. MORTAZAVI:  Good morning, your Honor.  This is

5   Sarah Mortazavi for the government, and also on the line for

6   the government is Benet Kearney.

7          THE COURT:  Good morning.

8          MS. KEARNEY:  Good morning.

9          THE COURT:  Counsel for Mr. Robinson?

10         MR. BUTLER:  Good morning, your Honor.  For the

11  record, my name is William Butler.  I am retained by

12  Mr. Robinson.  Mr. Robinson is also present.

13         THE COURT:  Good morning.

14         And counsel for Mr. Mangini?

15         MR. HARRINGTON:  Good morning, your Honor.  It is Bill

16  Harrington.  My co-counsel Jeff Marcus is also on the line, as

17  is our client Scott Mangini.

18         THE COURT:  Good morning.

19         Is the pretrial services officer also on the line?

20         OFFICER AHMED:  Yes, your Honor.  Mohammed Ahmed on

21  behalf of Pretrial Services.

22         THE COURT:  I want to confirm that the court reporter

23  is understanding us and is taking this down.

24         OFFICIAL REPORTER:  Yes, your Honor.  Good morning.

25         THE COURT:  I am Judge Paul Oetken and I am the Judge

1    who has been assigned to this case.  This is both defendants'

2    first appearance before a Judge in this court.  I understand

3    that both defendants were arrest on March 9th and presented on

4    the indictment before magistrate judges in Florida.  Today we

5    will be proceeding, as follows:  First, I have a few

6    preliminary matters regarding this remote proceeding.  I am

7    confirming that each of the defendants has waived his right to

8    be present for a live hearing and that it is appropriate to

9    proceed by telephone conference.  Second, we will conduct the

10   arraignment as to each of the two defendants.  Third, we will

11   address bail.  And fourth, we will address scheduling for the

12   case going forward.

13           I just want to confirm one more time that each of you

14   can hear me.  Ms. Mortazavi?

15           MS. MORTAZAVI:  Yes, your Honor.

16           THE COURT:  And Mr. Butler?

17           MR. BUTLER:  Yes, your Honor.

18           THE COURT:  Mr. Robinson?

19           DEFENDANT ROBINSON:  Yes, your Honor.

20           THE COURT:  Mr. Harrington?

21           MR. HARRINGTON:  Yes, your Honor.

22           THE COURT:  And Mr. Mangini?

23           DEFENDANT MANGINI:  Yes, your Honor.

24           THE COURT:  Thank you.

25           Ordinarily, of course, this proceeding would be

1    happening live in the courtroom with the defendants and counsel

2    for the parties present.  However, due to the public health

3    emergency created by the COVID-19 pandemic, we are proceeding

4    remotely by telephone conference and we are doing that pursuant

5    to the authority in Section 15002 of the CARES Act and the

6    standing orders issued by our Chief Judge of the Southern

7    District of New York pursuant to that Act, as well as Rule

8    10(b) of the Federal Rules of Criminal Procedure.  Under the

9    present circumstances, I find that proceeding by telephone

10   conference, subject to the defendants' waiver of physical

11   appearance, it is necessary and appropriate that video

12   telephone conferencing is not reasonably available at the

13   present time and I authorize the use of telephone conferencing

14   for purposes of this proceeding.

15            I have received and accepted written waivers of the

16   right to be present signed by each of the defendants and their

17   counsel and I just want to confirm with defense counsel that

18   each defendant was advised of his right to be present at this

19   arraignment and voluntarily gave up that right.

20            First, is that accurate as to Mr. Robinson,

21   Mr. Butler?

22            MR. BUTLER:  Yes, your Honor; that's accurate.

23            THE COURT:  And as to Mr. Mangini Mr. Harrington?

24            MR. HARRINGTON:  That's correct, your Honor.  He has

25   been advised and he waives his right to be present.

1              THE COURT:  All right.  Thank you.

2              We will proceed to the arraignment of Mr. Robinson and

3    I will start with a few questions for Mr. Butler.  Mr. Butler,

4    did you provide Mr. Robinson with a copy of the indictment?

5              MR. BUTLER:  Yes, your Honor.

6              THE COURT:  And did you explain the charges to him and

7    do you believe he understands the nature of the charges?

8              MR. BUTLER:  Yes, your Honor.  I have explained the

9    charges.  I believe he does understand and, your Honor, we will

10   waive formal reading of the indictment, if that suits the

11   Court.

12             THE COURT:  Okay.  That's fine.  Thank you.

13             And did you discuss with the defendant the plea that

14   he would like to enter?

15             MR. BUTLER:  Yes, your Honor.  We will enter a plea --

16   or I will enter a plea of not guilty for Mr. Robinson.

17             THE COURT:  All right.  Thank you.

18             Just to confirm with Mr. Robinson, is it correct that

19   you wish to plead not guilty at this time?

20             DEFENDANT ROBINSON:  Yes, your Honor.

21             THE COURT:  Thank you.  A plea of not guilty is

22   entered for Mr. Robinson.

23             I will turn to the arraignment of Mr. Mangini.

24   Starting with Mr. Harrington, have you provided a copy of the

25   indictment to Mr. Mangini?  Do you believe he understands the

1    nature of the charges?

2              MR. HARRINGTON:  Yes, your Honor.

3              THE COURT:  Has the defendant agreed that he did not

4    need to have a Judge publicly read the indictment aloud to him

5    at this time?

6              MR. HARRINGTON:  He has.  He does not need it read.

7              THE COURT:  All right.  And did you discuss with the

8    defendant the plea he would like to enter?

9              MR. HARRINGTON:  I did, and he is prepared to enter a

10   not guilty plea.

11             THE COURT:  Thank you.  And just to confirm,

12   Mr. Mangini, is it correct that you wish to plead not guilty at

13   this time?

14             DEFENDANT MANGINI:  Yes, your Honor.

15             THE COURT:  Thank you.

16             That completes the arraignment of the two defendants

17   who pleaded not guilty.  I will start with counsel for the

18   government on bail.  Have the parties reached agreement with

19   respect to bail, Ms. Mortazavi?

20             MS. MORTAZAVI:  Yes, your Honor.  This is Sarah

21   Mortazavi for the government.

22             The parties have received the pretrial services

23   reports with the bail recommendation.  I have reached out to

24   defense counsel prior to this hearing with a proposed bail

25   package for each defendant that largely mirrors those

1    recommendations and I have not yet heard back as of the time of

2    this conference whether there is agreement.

3              THE COURT:  All right.

4              MS. MORTAZAVI:  I am prepared to set forth in the

5    record the government's recommendation as to bail.

6              THE COURT:  Why don't you go ahead and do that.

7              MS. MORTAZAVI:  Certainly.

8              Beginning with Mr. Robinson, the government would

9    propose the following package:  A $100,000 bond signed by two

10   financially responsible persons; supervision as directed by

11   pretrial services; the defendant to surrender all travel

12   documents and make no new applications; travel to be restricted

13   to the Southern District of New York, Eastern District of New

14   York, Middle District of Florida and transit points in between;

15   the defendant to submit to substance abuse testing and

16   treatment as directed by pretrial services; the defendant to

17   have mental health evaluation and treatment as deemed necessary

18   by Pretrial Services, the defendant to have no contact with the

19   defendants listed in this case or any of the related cases that

20   arose out of the same investigation which include 20 crim 160,

21   United States v. Navarro, 20 crim 161, United States v. Sarah

22   Izhaki and Ashley Lebowitz, and 20 crim 163 United States v.

23   Grasso, *et al*; the defendant to have no contact with race

24   horses without supervision of the third-party owner at the

25   premises where the horse is stabled; and the defendant to

K475robC                    phone conference

1   refrain from conduct as alleged in the indictment.

2           THE COURT:  Did you say no contact with other

3   defendants in those cases, period?  Or outside the presence of

4   counsel?

5           MS. MORTAZAVI:  I neglected to mention outside the

6   presence of counsel but that was the intent of that particular

7   requirement.

8           THE COURT:  Okay.  Anything else as to Mr. Robinson?

9           MS. MORTAZAVI:  Nothing else as to Mr. Robinson.

10          THE COURT:  Why don't I go ahead and hear from counsel

11  for Mr. Robinson as to whether you agree with those conditions.

12          MR. BUTLER:  Your Honor, for the record, William

13  Butler here.

14          I believe those conditions are generally fair and we

15  don't object, although I have not spoken with Mr. Robinson

16  because we just received these conditions prior to our hearing

17  beginning this morning.  But, given the fact that I haven't

18  spoken to him, I still believe that these conditions are very

19  close to what was given when he was released in the Middle

20  District of Florida, I think they'll be fair.

21          THE COURT:  All right.

22          Well, they sound reasonable to me and assuming that

23  they're essentially on consent, I will adopt those conditions.

24  If it turns out that there is some point of disagreement, you

25  can come back to me within the next few days and I will address

1    any disagreement.  But, those all sound right to me and I will

2    adopt those as conditions of the defendant's release on bail.

3    And just so you both understand, the conditions that I adopt

4    are conditions that will apply through this case, and any

5    violation of those conditions could result in your detention

6    for the remainder of the case going forward.

7            Ms. Mortazavi, would you like to address the proposed

8    conditions as to Mr. Mangini.

9            MS. MORTAZAVI:  Certainly, your Honor.  And, again,

10   these largely mirror the recommendations of Pretrial Services

11   which also reflect the conditions previously imposed when the

12   defendant was first presented.

13           So, the government would propose the following

14   package:  A $100,000 bond signed by two financially responsible

15   persons; supervision as directed by Pretrial Services; the

16   defendant to surrender all travel documents and make no new

17   applications; travel to be restricted to the Southern District

18   of New York, Eastern District of New York, Southern District of

19   Florida and transit points in between; the defendant to submit

20   to substance abuse testing and treatment as directed by

21   pretrial services; the defendant to have no contact with the

22   defendants in any of the related cases -- I will not repeat

23   them again unless the Court would wish me to do so -- or his

24   co-defendant outside the presence of counsel; the defendant to

25   reside at his current address in Boca Raton, Florida; the

1    defendant to have no contact with race horses without

2    supervision of the third-party owner of the premises where the

3    horse is stabled; and the defendant to refrain from conduct as

4    alleged in the indictment.

5           There are no further conditions proposed by the

6    government.

7           THE COURT:  All right.

8           Mr. Harrington?

9           MR. HARRINGTON:  Thank you, your Honor.

10          The conditions are fine, we consent to them with one

11   caveat.  We would just ask that the residency requirement be

12   one that allow Mr. Mangini to move, with notice to the pretrial

13   services officer.  The reason for that is that his lease is

14   coming up soon and it is very likely that he will have to get a

15   new lease somewhere else.  I did communicate with the

16   government about this -- I'm sorry, your Honor.

17          THE COURT:  Do you know if that's also going to be in

18   Boca Raton?

19          MR. HARRINGTON:  That's the goal.  It is just that I

20   don't think he has yet identified the location that he will

21   move to.

22          MS. MORTAZAVI:  The government has no objection to

23   that amendment to the condition.

24          THE COURT:  All right.  With that amendment, the

25   conditions with respect to had Mr. Mangini are adopted and I

1   will sign the bail order indicating that those are the

2   conditions of pretrial release on bail.

3          If there is nothing else with respect to bail, we will

4   turn to scheduling.  The government has submitted a status

5   letter on April 3rd which gives an overview of the case and

6   describes the categories of discovery it expects to produce.  I

7   just wanted to start by confirming that defense counsel have

8   reviewed the government's letter; is that correct, Mr. Butler?

9          MR. BUTLER:  Your Honor, I have not reviewed that

10  letter.  I apologize.  I haven't seen it in my e-mail.

11         THE COURT:  Oh.  Okay.  It was filed on the ECF

12  system, that's the electronic docket.  Do you have access to

13  that?

14         MR. BUTLER:  Yes, your Honor.  I do.

15         THE COURT:  Okay.  If you go on to that you will see

16  it.  I think there was a *pro hac vice* motion, it might be that

17  that wasn't granted until after.

18         MR. BUTLER:  That may very well be the case, your

19  Honor, because I am very well familiar with Pacer.

20         THE COURT:  Okay.  Great.

21         And Mr. Harrington, have you seen that letter?

22         MR. HARRINGTON:  I have, your Honor, and I have

23  reviewed it.

24         THE COURT:  So, in any event, I am going to ask the

25  government just to highlight, in general, categories of

1    discovery and its expected timing for production.  I will also

2    note that the parties have agreed on a protective order

3    governing discovery and I signed that protective order

4    yesterday, April 6th.

5         I will now ask the government if there is anything you

6    would like to add about the case generally.  And, as I

7    mentioned with respect to discovery, if you would please

8    provide the general description proposed discovery and your

9    estimated timing.

10        MS. MORTAZAVI:  Certainly, your Honor.  This is Sarah

11   Mortazavi, for the record.

12        The defendants here were indicted as a result of an

13   investigation into race horse doping and the defendants, in

14   particular, were indicted in February of this year in

15   connection with multiple conspiracies that they engaged in both

16   together and separately related to their manufacture, creation,

17   sale, and distribution of adulterated and misbranded

18   performance enhancing drugs intended for use in doping race

19   horses as is set forth in our letter that the Court just

20   mentioned a minute ago.

21        With respect to discovery, as part of this

22   investigation, law enforcement agents had conducted multiple

23   searches of physical premises that include searches of premises

24   associated with Mr. Robinson conducted in September of last

25   year, as well as premises connected with both Mr. Robinson and

1    Mr. Mangini that were conducted on the day both of the

2    individuals were arrested, that is, March 9th of this year.  In

3    connection with those searches, the government has seized a

4    number of electronic devices containing many terabytes of

5    computer data that is still being processed for copy imaging

6    and later review.  The government has also, in connection with

7    those searches, taken multiple photos, physical documents,

8    physical items including the misbranded and adulterated drugs

9    that are at the heart of the indictment and other physical

10   items related to the charged case.

11          The government has also obtained a smart phone from

12   Mr. Robinson that contains, among other things, records of

13   calls, pictures, texts and WhatsApp messages relevant to the

14   case.  We also obtained business records including archived web

15   pages of various direct-to-consumer websites that were operated

16   in connection with the conspiracies, shipping records, payments

17   data, and other records that relate to the defendant's

18   businesses.

19          The government also has notices and informing letters

20   that were previously provided to the defendants by regulatory

21   authorities including the Food and Drug Administration and the

22   Florida Department of Health related to their creation of

23   adulterated and misbranded drugs.

24          The government also has the consent of two e-mail

25   accounts associated with Mr. Mangini's businesses and separate

1  from those law enforcement reports and records of undercover

2  searches -- pardon me -- of undercover purchases that were

3  conducted from these websites as well as other aspects of the

4  investigation.

5          With respect to timing, the government anticipates

6  making an initial production of documents to both defendants at

7  some point this week and that initial production is currently

8  being prepared and will consist of FedEx records; search

9  warrants obtained by the government in this case; the phone

10 extraction that I mentioned a minute ago related to

11 Mr. Robinson; archived web pages from the direct-to-consumer

12 websites; the letters and other records of the regulatory

13 agencies I mentioned; and inventory notices and photographs of

14 searches that were conducted of the physical premises.

15         The government also intends to produce, on a rolling

16 basis, identified data from the electronic devices that were

17 seized and that are in the process of being searched, as well

18 as additional search warrants and agent reports, but the bulk

19 of the discovery the government intends to produce in the

20 future following this initial production will be the identified

21 electronic data from those devices.

22         I will pause there, your Honor, to see if there are

23 any questions.

24         THE COURT:  So, I understand the first production is

25 anticipated this week and then rolling production.  Is there an

1    estimate of when the bulk of that rolling production would be

2    completed?

3              MS. MORTAZAVI:  This is Sarah Mortazavi again.

4              It is a little difficult to estimate, your Honor, with

5    all candor, particularly considering the current situation

6    which has reduced staffing certainly at the U.S. Attorneys

7    office and at the federal agencies that are involved in the

8    investigation and so I will say that the electronic data that

9    has been seized are comprised of multiple terabytes of

10   information and it is a little difficult at this stage to know

11   how quickly the review will be able to proceed, particularly

12   considering the uncertainty with the time it will take to go

13   back to what I will call "business as usual."

14             THE COURT:  Right.

15             MS. MORTAZAVI:  What I would propose, your Honor --

16   and the government does intend to produce on a rolling basis

17   and on the sooner end of what it can -- the agent reports,

18   additional search warrants, and any other data it can produce

19   expeditiously.  But, what I would propose is that we, today,

20   schedule a second conference in this matter, perhaps three or

21   four months from today's date, at which point the government

22   will be able to provide an update on discovery and I believe

23   that at that second conference the parties will be able to

24   identify which motions, if any, they wish to make.  Although

25   the identified data is going to take some time to review and

1    produce, the government is confident it will be able to produce

2    everything including search warrants that would inform the

3    decision of whether or not to file suppression motions.  And I

4    think that decision can be made even if relevant data is still

5    being produced to the defendants.

6          THE COURT:  So you are proposing a conference in three

7    or four months and at that conference then setting a schedule

8    for potential motions?

9          MS. MORTAZAVI:  Correct, your Honor.

10          THE COURT:  All right.

11          I would like to hear from counsel for each of the

12    defendants as to scheduling.  In some cases I go ahead and set

13    a trial date and a motion schedule.  In a case like this,

14    particularly given the current kind of semi-lockdown situation

15    we are in it is harder, I think, to do that.  So, I guess I

16    would like to hear from the defense as to how you propose going

17    forward.  I am fine with what the government has proposed, just

18    scheduling a conference in three or four months if that's your

19    preference.  But, if you have something else in mind, I am also

20    happy to hear that.  I will start with Mr. Butler.

21          MR. BUTLER:  Your Honor, William Butler here.

22          I agree with the government's proposal.

23          THE COURT:  Okay.

24          And Mr. Harrington?

25          MR. HARRINGTON:  Thank you, your Honor.  Yes, I think

1    that proposal makes sense as well.

2            THE COURT:  All right.  So, that's fine with me.  I

3    think that makes sense.  I won't set a trial date or a motion

4    schedule at this point but I will set a conference in three or

5    four months and I guess at this point I will put it down as a

6    regular conference and if there is a request to, you know,

7    excuse the physical presence of either or both of the

8    defendants down the line, we can address that later in advance

9    of the conference.

10           Is that okay with everybody?

11           MR. BUTLER:  Yes, your Honor.

12           MR. HARRINGTON:  That sounds great.

13           THE COURT:  All right.  Give me a minute.

14           (pause)

15           THE COURT:  So, I would suggest July 29th.  I will ask

16   each of you if you have a problem with July 29th in the

17   afternoon, let's say 3:00?  I will start with Ms. Mortazavi.

18           MS. MORTAZAVI:  No objection from the government.

19   Thank you.

20           THE COURT:  And does July 29th at 3:00 p.m. work for

21   Mr. Butler?

22           MR. BUTLER:  Yes, your Honor, it does.

23           THE COURT:  And Mr. Harrington?

24           MR. HARRINGTON:  Yes, that date works.  Thank you,

25   Judge.

1    THE COURT:  All right.  The next conference in this

2    case will be July 29th, 2020, at 3:00 p.m.  The default will be

3    that it's in courtroom 706 at 40 Foley Square.  If that changes

4    and it ends up being a video or audio conference, I will let

5    you know well in advance.  And if there is any request to waive

6    presence of defendants you will let me know, please, at least

7    three days before that.  I guess two days before that is fine.

8    That covers everything I had to address.  I will ask

9    each of you whether you had anything else you wanted to raise.

10   And I will start with counsel for the defendants, Mr. Butler,

11   anything else?

12   MR. BUTLER:  No, your Honor.  Thank you.

13   THE COURT:  And Mr. Harrington?

14   MR. HARRINGTON:  Your Honor, there is one small matter

15   which is that Mr. Marcus needs to file *pro hac* papers.  He

16   actually currently is admitted *pro hac* in another matter so we

17   weren't sure if --

18   THE COURT:  Yes.

19   MR. HARRINGTON:   -- if in light of the pandemic it

20   would be okay if he files the papers without all the usual

21   process around it.

22   THE COURT:  It is fine with me.  I just have to check

23   with the powers at be in the Clerk's office as to whether I can

24   get that done.  So, I will ask my courtroom deputy Mr. Hampton

25   to check on whether we can just do it as is or if we need

K475robC                    phone conference

1  anything else and he can let you know whether we need more than

2  we already have, other than the actual requests on ECF.

3          MR. HARRINGTON:  Thank you, your Honor.  I appreciate

4  that.

5          THE COURT:  All right.  And anything else from the

6  government?

7          MS. MORTAZAVI:  This is Sarah Mortazavi again.

8          The government would ask that we exclude time between

9  today's date and the next conference date to facilitate the

10  production and review of discovery and discussions with counsel

11  regarding any pretrial motion.

12          THE COURT:  Is there any objection to exclusion of

13  time, Mr. Harrington?

14          MR. HARRINGTON:  No, there is not.

15          THE COURT:  And Mr. Butler?

16          MR. BUTLER:  No, your Honor.  No objection.

17          THE COURT:  All right, I grant the application and I

18  exclude time under the Speedy Trial Act from today's date to

19  the date of the next conference which is July 29th, 2020.  I

20  find that the ends of justice served by granting this

21  continuance outweigh the interest of the public and the

22  defendants in a speedy trial based on the time for production

23  of discovery and review of discovery, time for defendants to

24  consider and prepare any motions, and potentially time for the

25  parties to discuss possible disposition of the case.  Based on

K475robC                    phone conference

1    those considerations, I exclude time from today's date to July

2    29, 2020 under the Speedy Trial Act under 18 U.S.C.

3    Section 3161(h)(7)(A).

4            If there is nothing else -- if anybody has anything

5    else, let me know in the next few seconds.  (pause)

6            Okay.  Thank you, everyone.  Court is adjourned.

7                              o0o

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25