UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **United States of America** <br>     **Plaintiff** <br><br> **v.** <br><br> **SCOTT ROBINSON** <br>     **Defendant** | **<u>DEFENDANT ROBINSON'S</u>** <br> **<u>SENTENCING MEMORANDUM</u>** <br><br> 1:20-cr-00162-JPO |

Comes the Defendant, SCOTT ROBINSON, by counsel and submits his Sentencing Memorandum to assist the Court in meting a sentence that is sufficient but not greater than necessary to meet the aims of sentencing.

In considering the minimally sufficed sentence under §3553(a):

1. <u>The nature and circumstances of the offense and the History and Characteristics of the Offender</u>

    (a) <u>Nature and Circumstances of the Offense</u>

    Scott Robinson has pled guilty to a one count Superseding Information "Drug Adulteration and Misbranding Conspiracy" on September 16, 2020. The majority of this case deals with shipping items for sale used by racehorses intended to improve their performance. It is notable that Scott Robinson filed his income taxes each year [see ¶102 and ¶103 of the PSR] on the income from this offense.

Scott Robinson is 46 years old. His criminal history guideline is 0. (PSR ¶6) Criminal History Category Research performed by the United States Sentencing Commission has shown that Defendants like Scott who have a criminal history of 0 have an even lower rate of recidivism than the usual Criminal History Category of I. The United States Sentencing Commission 2004 identifies this group as "the most empirically identifiable group of federal offenders who are

least likely to offend".  See "<u>A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score</u>" at 14-15; see also <u>U.S. v. Cabrera 567,</u> F.Supp.2d 271 (D. Mass 2008) (significantly reducing a sentence based on the fact that Defendants with 0 criminal history points are less likely to recidivate then other defendants in Criminal History Category I.

    2. <u>The Need for the Sentence Imposed to Promote Certain Statutory Objectives</u>:

        a. <u>To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense</u>

This Honorable Court has a duty to impose a sentence that will promote respect for the law and provide just punishment. However, Scott Robinson has otherwise been a law-abiding citizen his entire life.

A non-custodial sentence would not unduly depreciate the seriousness of the offense. A non-custodial sentence would be a just punishment for this offense by this Defendant.

This lack of prior criminal history means that becoming a convicted felon carries a more significant impact upon Scott then it would upon an individual with a prior history in the criminal justice system. The mere fact that Scott Robinson is becoming a convicted felon is, in itself, more than sufficient punishment in this case to satisfy the statutory requirements. Scott is losing his right to vote, his right to hold office, his right to sit on a jury, and his right to possess a firearm. He is losing the ability to possibly obtain different professional licenses. Also, there are many other "collateral consequences" of a felony conviction, under both state and federal law. "Criminal conviction brings with it a host of sanctions and disqualifications that can place an unanticipated burden on individuals trying to re-enter society and lead lives as productive

citizens. "Beyond the Sentence - Understanding Collateral Consequences", Sarah B. Berson, National Institute for Justice, http://www.nij.gov/journals/272/pages/collateral-consequences.aspx.

These facts should be considered by the Court when imposing a sentence that is sufficient but not greater than necessary to fulfill the purposes of the Sentencing Reform Act. These facts show the Court that there is definitely punishment in a conviction, beyond just a term of incarceration. Indeed, the United States Supreme Court chided the lower courts for giving no weight to the substantial restriction of freedom involved in a term of supervised release or probation. See United States v. Gall, 128 S.Ct. 586 (2007). The Supreme Court said that "[o]ffenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty." Gall at 596 (citing United States v. Knights, 534 U.S. 112, 119, (2001)); see also Griffin v. Wisconsin, 483 U.S. 868, 874 (1987) ("Inherent in the very nature of probation is that probationers `do not enjoy the absolute liberty to which every citizen is entitled").

(b) To protect the public from further crimes of the defendant

The best way to predict future behavior of a defendant is to look at their past behavior. Scott Robinson has absolutely no criminal history whatsoever at age 46. As supported by both extensive empirical studies and case law, Mr. Robinson is an extremely low risk to re-offend, based upon a variety of factors. A non-custodial sentence would be sufficient to deter Mr. Robinson from any future criminal conduct, because such a sentence will have a huge impact on his life.

3. Further consideration of Scott Robinson's history and characteristics.

Excerpts and paraphrases from letters of support are noted here because persons who know Scott best are best qualified to tell the Court what his history and characteristics are (These letters in full are attached to the Memorandum)

His psychologist, Ronald E. DeMao, Ph.D. has treated Scott for approximately three years for depression, chronic pain and chronic traumatic encephalopathy (CTE) as a result of a head injury Scott Suffered in the United States Navy. Dr. DeMao states that in his 30 years of practice "ever meeting anyone as generous in his giving. He has yearly donated anonymously to children's Christmas charities. He has been a major benefactor to his local State Fair and FFA Associations." Scott Robinson has donated over $100,000.00 to rehabilitate and care for retired racehorses. Dr. DeMao states that he finds it inconceivable that Scott would ever do anything to intentionally harm a horse. Dr. DeMao states that from a clinical perspective, Scott Robinson is free of any antisocial or other character pathology.

Sage Elizabeth Sanders stated that Scott was close to being homeless in 1998 when she met him. He worked multiple jobs because he wanted to succeed. She further says that not only is his work ethic outstanding, but he is kind mannered, benevolent and loves to help other people.

Stephanie Morris states that she has known Scott for over ten years. She says "He is kind. He is courageous. He is generous and vivacious. He is so inherently good. I am confident that the letters you have received have echoed this same sentiment because they are true. For years I have watched in awe as Scott gives selflessly of himself and his time over and over. When an elderly couple needed a hand to move, carry and repair their belongings, Scott never hesitated. When the local Youth Baseball League had outstanding registrations in need of payments, Scott didn't waiver. When a small Fairgrounds in rural Ohio needed a water truck for their annual fair

to take place, again Scott took the call. Funeral eulogies, unforeseen car repairs, volunteer to serve meals, donate supplies to the Standardbred Retirement Foundation, make Christmas Day possible for broken families, Scott graciously agrees."

Angela Pettit who has known Scott since grade school says that "Scott is also very caring and supportive of his friends. Since childhood, Scott has always had a love for owning and raising horses. His compassion and patience with animals is something he is known for. His animals are well cared for and always in the best environment".

Scott Nasdeo has known Scott for 25 years. He says that family is extremely important to Scott.

Michael P. Hein, D.O. has known Scott since he became Scott's physician in 2011. He states he has witnessed Scott's generosity and has personally seen Scott help others.

Scott's brother-in-law J. Clayton Miller says that he has known Scott for about 14 years. He states:

> "I am an attorney practicing in a small Indiana city. My practice includes criminal defense. I write this letter from both an attorney's and a family member's perspective.
>
> The qualities that I believe best describe Scott are that he is generous, trustworthy, and entrepreneurial. Time and time again, I have witnessed Scott to be the first person to help someone in need. Scott paid for a new roof to be installed on his disabled mother's home. He bought his veteran father a car. Scott is also generous just because he can be. A few years ago, when my wife and I bought a new home, he purchased flooring my wife wanted as a housewarming gift. He gifted my children (his nephew, Luke, and niece, Lilly) initial contributions to their college funds. During the entire time I have been in a relationship with Malia, it has been a repeated theme within her family that Scott has helped nearly every family member in one way or another."

Bill Sanders states he has known Scott for over 20 years. He states "Scott has been honorable, honest and a good investment partner. He has never failed in his responsibilities and I look forward to working with him more in the future".

Scott tried his best to take care of his family, his friends, and horse racing. He has tried to help out anyone in need in horse racing. He has donated money to the Standardbred Retirement Foundation, Disabled Jock[ies], announcers, and numerous trainers in need. He sponsors dog shelters for homeless dogs and he also sponsors 20 foster children at Christmas. He has been fortunate and he does everything he can do for the less fortunate.

A further demonstration of Scott's love for animals was born out of February 10, 2021 when he was nearby and two dogs began to fight. Fearing that if the fight wasn't broken up, the dogs would kill each other, Scott broke up the fight at considerable risk and injury to himself which included staples for the laceration in his head. (see attached pictures of the aftermath along with a picture of one dog)

## **CONCLUSION**

Scott's physical condition and mental and emotional health are noted in the PSR ¶s73-82 which include permanent injury suffered while in the military. (PSR ¶73)

Scott Robinson should not be further punished for "obstructive conduct". He understands the guideline addition; however, he did not expose the Government's ongoing investigation. He was upset that his computer was seized. In a moment of anger and poor judgment, he did tell the FBI Agent that he would expose the ongoing investigation if his computer was not returned.

He did not expose the investigation and he did apologize to the Agent and then later to an AUSA working on the case.

A large sum of money was earned by Scott from this offense. But as noted earlier, he paid income taxes each year on the money which he earned. He has agreed to make restitution for the sum that the Government has estimated that was earned illegally but can best do this if not given a custodial sentence.

Scott Robinson is 46 years old with a criminal history score of 0. A felony conviction itself will be adequate deterrence for future conduct.

The defense requests a non-custodial sentence of probation.

Respectfully submitted,

s/ William M. Butler, Jr.
WILLIAM M. BUTLER, JR.
500 West Jefferson Street
Suite 1520
Louisville, Kentucky 40202
(502) 582-2020 telephone
(502) 583-8007 fax
Email: wmb@kycriminallawyer.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2021 I electronically filed the foregoing through the ECF System, which will send a notice of electronic filing to Assistant United States Attorney Sarah Mortazavi, Assistant United States Attorney Andrew Adams and Assistant United States Attorney Benet Kearney.

William M. Butler, Jr.
William M. Butler, Jr.